

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH 312-720-8168<br>THAT IS STORED AT PREMISES CONROLLED BY<br>VERIZON WIRELESS | )<br>)<br>)   Case No.  3:17 mj 170<br>)<br>)<br>) |

FILED
RICHARD W. NAGEL
CLERK OF COURT
2017 APR 24 PM 4:29
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution and possession with intent to distribute controlled substances |
| 21 U.SC. 841(a)(1) and 846 | Conspiracy to distribute and possess with intent to distribute controlled substances |

The application is based on these facts:

See Attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Timothy S. Maurath, TFO, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/24/17

_____
*Judge's signature*

City and state: Dayton, Ohio        Michael J. Newman, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **312-720-8168** THAT IS STORED AT PREMISES CONROLLED BY **VERIZON WIRELESS** | Case No. _____ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Drug Enforcement Administration Task Force Officer Timothy S. Maurath, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. Affiant makes this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by **VERIZON WIRELESS**, a wireless provider headquartered at **1 Verizon Way, Basking Ridge, NJ 07920**. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require **VERIZON WIRELESS** to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. Affiant has been a Task Force Officer with the Drug Enforcement Administration since January 2012. Affiant is a Detective with Huber Heights Police Division (HHPD) and has been employed by HHPD since 2007. Affiant has conducted and participated in complex drug trafficking conspiracy and money laundering investigations which have resulted in arrests;

execution of search warrants that resulted in the seizure of narcotics, narcotics proceeds and other evidence of narcotics trafficking activities; and supervised the activities of cooperating sources (CS) that have provided information and assistance resulting in narcotics purchases. Through training and experience, Affiant is familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived there from. Through training and experience, Affiant is familiar with the practices of narcotics distributors, whereby they attempt to conceal the true nature, source and location of proceeds of illegal activity, commonly referred to as money laundering. Affiant has received training on numerous subjects related to the internet, social media, smart phones, smart phone applications, SMS/MMS, cellular phone tolls, Title III intercepts, Penlink, and computer programming languages. Affiant is familiar with and has working knowledge of the internet, social media websites, online commerce, smart phones, smart phone applications, SMS, and MMS. Affiant has personal accounts of and is a daily user of the aforementioned items.

3. The facts in this affidavit come from Affiant's personal observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of Affiant's knowledge about this matter.

4. Based on training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 21 U.S.C §§ 841(a)(1), 843, and 846 and committed by **Robert W. STROUD ("STROUD"), Carlton D. HARRIS II ("HARRIS")**, and persons currently unknown will be found in the information associated with **312-720-8168**.

Affiant asserts there is probable cause to search the information described in Attachment A for evidence of these crimes (as described in Attachment B).

## PROBABLE CAUSE

5. **(312) 720-8168** is a pre-paid Verizon Wireless cellular phone assigned to account 1044066568. The address assigned to the account is 295 Parkshore Dr. Folsom, CA 95630, which is the generic address assigned to pre-paid Verizon Wireless cellular phones.

6. On September 8, 2016 and February 16, 2017, Affiant arranged for a confidential source ("CS1") to conduct controlled buys of narcotics from HARRIS. CS1 has been convicted of misdemeanor receiving stolen property, disorderly conduct, and a prior federal felony conviction for Conspiracy to possess with intent to distribute heroin. CS1 is believed to be credible and the information that CS1 has provided throughout the investigation is believed to be reliable.

7. On September 8, 2017, Affiant was informed by CS1 that "BONJO" (phonetic) is a source of supply of narcotics for HARRIS. HARRIS provided the information to CS1, via a cellular phone conversation. On multiple occasions afterwards, HARRIS makes reference to "BONJO" and/or his "Baby Mama's Daddy" being HARRIS' source of supply of narcotics. Investigators knew "BONJO" to be a reference to STROUD, as it was common knowledge to local law enforcement from prior investigations that "BONJO" was STROUD's nickname. Additionally, HARRIS' phone had repeated contact with a cellular phone (980-318-7977) registered to "Stroud Enterprise, LLC" at an address that was also listed on STROUD's 2011 driver's license. In October 2016, agents also obtained a warrant to track the GPS data for 980-318-7977; on October 31, 2016, the GPS data placed the phone at the Dayton Airport, and agents

3

observed a male matching STROUD's physical description inside the airport, and airline records showed that STROUD flew from Dayton that day. This in part confirmed STROUD's use of 980-318-7977. In 2010, STROUD was convicted in the United States District Court in Cincinnati of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). In or about 1994, STROUD was also convicted of felony drug offenses in Montgomery County, Ohio Common Pleas Court.

From approximately the end of February, 2017 until the present date, agents have been intercepting phone calls occurring over HARRIS' cellular phone 937-838-7736 pursuant to a court order issued by the Honorable Thomas Rose, United States District Court, Southern District of Ohio. HARRIS has been intercepted speaking about the distribution of drugs. For example on April 8, 2017 at approximately 12:32 p.m., HARRIS used 937-838-7736 to make an outgoing call to Bryan Johnson (JOHNSON) at 937-474-8150. The following is a transcription of the call between HARRIS and JOHNSON:

CALL #2972

JOHNSON: (U/I)

HARRIS: "Hello. Hey, can your dude tint me up today?"

JOHNSON: "Uh, yeah, they said it was about a seven... I mean a seven and a half or eight."

HARRIS: "That shit?"

JOHNSON: "Huh?"

HARRIS: "That shit?"

JOHNSON: "Yeah, they said it was only a seven and a half... or eight."

HARRIS: "We can do somethin' with that, huh?"

4

| | |
|---|---|
| JOHNSON: | "Huh?" |
| HARRIS: | "I said we can do somethin' with that, huh?" |
| JOHNSON: | "Shit... Prolly so. I'mma get... I still got a little bit, though. I'mma give it to some mo' people, too. My (U/I) didn't come down yesterday, so they'll be down today, so I'm gonna give some to them, too. I only give it to, like, three of my main people, for real, so I can get... Know what I mean?" |
| HARRIS: | "Yeah... You talk to your man?" |
| JOHNSON: | "Who? Yeah, yep, yep, he said he'll be back Monday. Be back Monday, fo sho." |
| HARRIS: | "You think that dude can tint me today?" |
| JOHNSON: | "Huh? Yep, yep, then they're callin' me right now." |
| HARRIS: | "Arright, bet, tell him, uh, I'm tryin to get tinted up." |
| JOHNSON: | "Arright, I'm bout to give him your number." |
| HARRIS: | "Arright, bet, bet, good lookin' out, Cuz." |
| JOHNSON: | "Arright. Arright." |
| END OF CALL. | |

Affiant believes HARRIS provided a small amount of narcotics to JOHNSON so that JOHNSON could provide some of it to his customers to test it for potency, with the expectation that the customers would rate the narcotics on a scale of 1 to 10 (with 10 being the most potent). JOHNSON stated that the testers gave the narcotics a rating of 7.5, and HARRIS replied, "We can do somethin' with that, huh?" Affiant believes that HARRIS asked JOHNSON if they

5

would be able to add cutting material to the narcotics to dilute its potency and increase the supply (a common process among drug traffickers).

8. STROUD and HARRIS have been intercepted speaking to each other, with STROUD earlier in the interception period using 980-318-7977. In March, STROUD stopped using 980-318-7977 (it is no longer active), and began forwarding calls from that number to **(312) 720-8168**. Subsequently, STROUD was intercepted speaking to HARRIS while using the **(312) 720-8168** phone. STROUD also appears to be presently using at least one other phone (704-775-1500) based on his recent interception.

9. An example of a conversation between HARRIS and STROUD occurred on April 14, 2017 at approximately 5:03 p.m., HARRIS (using 937-838-7736) received an incoming call from STROUD (using 704-775-1500). A portion of the call (after an earlier portion of the call has already occurred) is set forth below:

| | |
|---|---|
| STROUD: | "What's been goin on?" |
| HARRIS: | "Nothin'...Chillin'...Watching the news." |
| STROUD: | "What was that?" |
| HARRIS: | "Huh?" |
| STROUD: | "What was that?" |
| HARRIS: | "I'm talking about watching the news." |
| STROUD: | "Say, what happened yesterday?" |
| HARRIS: | "What?" |
| STROUD: | "huh?" |
| HARRIS: | "Somebody got hit with twenty-one, twenty-one, twenty one squares Fetty, then 120 bands, a strap, took 4 cars, a square...a square of him, a square of her.....I said damn! Caught them in Harrison Twp." |

| | |
|---|---|
| STROUD: | "Somebody told on them, huh?" |
| HARRIS: | "Hell yeah! I said, man...don't nobody get caught like that...they...they pants were down." |
| STROUD: | "Nah, nah, looks somebody told on them." |
| HARRIS: | "They pants was down..I said Damn!" |
| STROUD: | "(U/I)...somebody said" |
| HARRIS: | "You know it gonna be slow in the neighborhood:" |
| STROUD: | "Huh?" |
| HARRIS: | "It's about to be slow in the neighborhood." |
| STROUD: | "Never." |
| HARRIS: | "Huh?" |
| STROUD: | "Never." |
| HARRIS: | "Shit." |
| STROUD: | "That ain't shit." |
| HARRIS: | "Somebody..somebody...somebody...Somebody else got, uh, around with 20." |
| STROUD: | "Yeah, that ain't shit." |
| HARRIS: | "Man..you didn't hear about that shit in Greene county?" |
| STROUD: | "nuh uh" |
| HARRIS: | "They got the 20 suspects with the hunnid charges." |
| STROUD: | "huhn uh" |
| HARRIS: | "Their slow...it's gonna get slow." |
| STROUD: | "Nah..never." |

| | |
|---|---|
| HARRIS: | "Watch pop..I'm tryin to tell you." |
| STROUD: | "Huh?" |
| HARRIS: | "I'm tryin to tell you right now, theres not so many niggers jumping, thats why i'm saying that...so whoever they was...(U/I)" |
| STROUD: | "It ain't cuz of that though! It ain't cuz of that!" |
| HARRIS: | "I'm talkin' about whoever hand they was hittin' its about to get slow" |
| STROUD: | "Nah, cause if it was, they wouldn't a had.... They must a just got it....they was only givin' them like 1" |
| HARRIS: | (Laughter) |
| STROUD: | "Had to been..." |
| HARRIS: | (laughter) "thats what i said..." |
| STROUD: | "They wasn't... They wasn't doing no good...(U/I)...Even if (U/I)..." |
| HARRIS: | "you talking about..." |
| STROUD: | "If somebody met...(U/I) they wouldn't a had all that...(U/I)...all that...cause that ain't shit" |
| HARRIS: | "Uh..." |
| STROUD: | "For real!" |
| HARRIS: | "I'm sayin', you know, niggas down here ain't jumpin like that...There ain't too many niggers that's, that's, that's, thats rockin' like that" |
| STROUD: | "Yeah...Yeah…" |
| HARRIS: | "The Fetty ain't rockin like that....thats what I'm sayin like...you know what I'm sayin? ain't too many niggers...Thats what i was tellin Joey...Even with that they was probably dishing about 3 here..... ten here, (U/I) here, but with all them niggers and all the niggers that they was fucking with it's about to get slow" |
| STROUD: | "No...We'll fuck the city up." |
| HARRIS: | "Huh?" |

STROUD: "No, it be alright."

HARRIS: "You gonna see..."

STROUD: "It'll be alright..."

Call continues

Affiant believes HARRIS and STROUD discussed a recent drug raid in the Dayton area in which 21 kilograms of Fentanyl, $120,000.00, a firearm, 4 vehicles, 1 kilogram of Heroin, and 1 kilogram of Cocaine were seized ("twenty one squares Fetty, then 120 bands, a strap, took 4 cars, a square...a square of him, a square of her.....I said damn! Caught them in Harrison Twp."). HARRIS referenced drug sales slowing down as a result of the drug raid, and STROUD reassured HARRIS that drug sales will not slow down and that the drugs seized were small compared to the amount of narcotics that STROUD distributes. STROUD reassured HARRIS that they will sell large amounts of narcotics ("No...We'll fuck the city up.").

10. From March 16, 2017 to March 27, 2017, per information from pen register, every contact (wire and text) from 980-318-7977 was being forwarded 312-720-8168. Based in part on the comments above, it appears that STROUD is supplying drugs to HARRIS and his associates, and it is possible that there are text contacts between STROUD and unknown individuals with whom he is working to arrange the drug shipment(s). Based on their drug trafficking relationship and the content of their intercepted phone calls, and toll data indicating that they have exchanged texts over the past several months, Affiant believes there is probable cause to believe that information (such as text messages or voice mails) associated with 312-720-8168 may contain information pertaining to drug trafficking, such as the timing and nature of incoming drug shipments and payment for same.

11. In my training and experience, Affiant has learned that **VERIZON WIRELESS** is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for **VERIZON WIRELESS** subscribers may be located on the computers of **VERIZON WIRELESS**. Further, I am aware that computers located at **VERIZON WIRELESS** contain information and other stored electronic communications belonging to unrelated third parties.

12. Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of **VERIZON WIRELESS** for weeks or months.

13. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by **VERIZON WIRELESS** for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

14. Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

15. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

16. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile

11

Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

17. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

18. In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

19. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require **VERIZON WIRELESS** to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

20. Based on the forgoing, I request that the Court issue the proposed search warrant.

21. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

22. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

23. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of

the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Timothy S. Maurath
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on April 24, 2017.

_____
HONORABLE MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with **312-720-8168,** which has **MEID: A00000476CE7C6,** that is stored at premises owned, maintained, controlled, or operated by **VERIZON WIRELESS**, a wireless provider headquartered at **1 Verizon Way Basking Ridge, NJ 07920**.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be disclosed by VERIZON WIRELESS

To the extent that the information described in Attachment A is within the possession, custody, or control of **VERIZON WIRELESS**, including any messages, records, files, logs, or information that have been deleted but are still available to **VERIZON WIRELESS** or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **VERIZON WIRELESS** is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    a.    All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

    b.    All existing printouts from original storage of all of the text messages described above;

    c.    All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from March 15, 2017 to the present;

    d.    All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e. All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

f. Detailed billing records, showing all billable calls including outgoing digits, from March 15, 2017 to present;

g. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from March 15, 2017 to present;

h. Incoming and outgoing telephone numbers, from March 15, 2017 to present;

i. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

j. All records pertaining to communications between **VERIZON WIRELESS** and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 843, and 846

involving Robert W. Stroud ("STROUD") since March 15, 2017, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) the possession, acquisition, sale, or distribution of illegal drugs; communications between STROUD and Carlton Harris ("HARRIS"); preparatory steps taken in furtherance of narcotics possession or distribution; preparatory steps taken in furtherance of narcotics sale; and the proceeds of drug sales.

(b) The identity of the person(s) who created, possessed, or used the cellular number/ID/ phone, including records that help reveal the whereabouts of such person(s).